UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
:
KEVIN RA, : CASE NO. 1:15-CV-2416
:
       Plaintiff, :
:
  vs. : OPINION & ORDER
: [Resolving Docs. 37, 39]
ORANGE VILLAGE, et al., :
:
       Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    The Court previously dismissed Plaintiff Kevin Ra's § 1983 claims against Defendants Orange Village and Thomas Shields.[1] The Court subsequently named Defendants the prevailing parties and granted their motion for attorney fees.[2]

    On March 14, 2017, the Court held a hearing to determine the amount of attorney fees.[3] Defendants seek approximately $15,800 in attorney fees for work performed by Defendant Orange Village's Law Director, Stephen Byron, and his associates.[4] Plaintiff Kevin Ra counters that the requested amount constitutes double billing because outside counsel, retained through Orange Village's insurance policy, litigated the lawsuit.

    Plaintiff Ra also moves to stay execution of the attorney fees judgment while his appeal is pending and to waive the supersedeas bond requirement.[5]

    For the following reasons, this Court **AWARDS** Defendants $5,062 in attorney fees and **DENIES** Plaintiff's motion to stay execution without a supersedeas bond.

---

[1] Doc. 25.
[2] Doc. 35-1.
[3] Doc. 40.
[4] Atty. Fees Hearing Tr. 2:3-10.
[5] Doc. 37. Defendants oppose. Doc. 38.

Case No. 1:15-CV-2416
Gwin, J.

## I. Background

Section 1988 authorizes courts to award a "reasonable attorney's fee" to the "prevailing party" in a § 1983 action.[6] The parties here dispute whether a "reasonable" attorney fee includes compensation for work by Defendant Orange Village's Law Director Stephen Byron, who effectively served as the village's in-house counsel.

On October 23, 2015, Plaintiff Ra filed a complaint in common pleas court under 42 U.S.C. § 1983.[7] Ra alleged equal protection and due process claims related to Defendant Orange Village's delivery of a housing code violation letter to his home.[8] Orange Village's insurer retained attorney John McLandrich to litigate the matter.[9]

Defendants removed the case to this Court[10] and moved for judgment on the pleadings, to which Plaintiff did not respond.[11] On July 12, 2016, the Court granted Defendants' motion for judgment on the pleadings and terminated the case.[12] The Court denied Plaintiff Ra's motion to alter or amend the Court's judgment on January 4, 2017.[13]

Outside counsel McLandrich handled the bulk of the legal work. Orange Law Director Stephen Byron and his two associates reviewed McLandrich's work and communicated case updates to Orange's mayor, Kathy Mulcahy. Law Director Byron also drafted a motion on behalf of Defendants for attorney fees.

The Court granted Defendants' motion to be named prevailing party and for attorney fees on January 4, 2017.[14] Defendants now ask this Court to order Plaintiff Ra to pay approximately

---

[6] 42 U.S.C. § 1983.
[7] Doc. 1-1.
[8] *Id.*
[9] Doc. 39 at 2.
[10] Doc. 1.
[11] Doc. 23.
[12] Docs. 25, 26.
[13] Doc. 35-1.
[14] *Id.*

Case No. 1:15-CV-2416
Gwin, J.

$15,800 in attorney fees and costs, all of which relate to work performed by Law Director Byron and his associates.[15] Defendants do not seek attorney fees related to outside counsel McLandrich's work. The Court held a hearing on March 14, 2017.[16]

Plaintiff Ra moves to stay the execution of the Court's judgment awarding attorney fees pending the outcome of his appeal to the Sixth Circuit.[17] He also asks the Court to waive the supersedeas bond normally required to stay a judgment pending appeal.[18] Defendants argue that the Sixth Court lacks jurisdiction over Ra's appeal, and therefore there is no good cause to stay the Court's judgment.[19]

## II. Legal Standard

Section 1988 "allows the award of 'a reasonable attorney's fee' to 'the prevailing party' in various civil rights cases, including suits brought under § 1983."[20] The Court has already determined that Defendants were the prevailing party and are entitled to fees.[21] The Court now determines what fee is reasonable.

Courts use the "lodestar" method to calculate a reasonable attorney fee.[22] The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[23] The award-seeking party should submit evidence of the hours worked and the rates sought.[24] If "documentation of hours is inadequate, the district court may reduce the award

---

[15] Atty. Fee Hearing Tr. 2:3-10.
[16] Doc. 40.
[17] Doc. 37 at 5.
[18] *Id.*
[19] Doc. 38 at 4.
[20] *Fox v. Vice*, 563 U.S. 826, 832–33 (2011).
[21] Doc. 35-1.
[22] *See Blum v. Stenson*, 465 U.S. 886, 888 (1984).
[23] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).
[24] *Id.*

-3-

Case No. 1:15-CV-2416
Gwin, J.

accordingly."[25] In determining hours, a court must exclude "hours that are excessive, redundant, or otherwise unnecessary."[26]

### III. Discussion

**A. Attorney Fees Calculation**

Defendants Orange Village and Thomas Shields seek approximately $15,800 in attorney fees.[27] The Court partially grants this request, awarding Defendants $5,062 in attorney fees.

The Court breaks down the Defendants' request into four categories. First, Defendants seek reimbursement for the $2,500 insurance deductible paid to retain attorney John McLandrich to litigate the case. Second, Defendants seek costs associated with Orange Law Director Stephen Byron's supervision of McLandrich. Third, Defendants seek compensation for Law Director Byron's briefing of the attorney fees issue. Fourth, Defendants seek fees associated with Ra's appeal of this Court's judgment.

The Court addresses each request in turn.

*1. Insurance Deductible*

Defendants are entitled to reimbursement for the deductible that Orange Village paid to retain counsel under its insurance policy. Orange Village paid a $2,500 insurance deductible to retain attorney John McLandrich to litigate the present matter.[28] At the attorney fees hearing, Defendants sufficiently documented the deductible's payment.[29] Moreover, the $2,500 deductible was a reasonable expense to secure counsel for a § 1983 defense.

---

[25] *Id.*
[26] *Id.* at 434; *see also* S. Rep. No. 94-1011, at 6 (1976) (Judiciary Committee Senate Report stating that courts should compute § 1988 attorney fees "for all time reasonably expended on a matter").
[27] Atty. Fee Hearing Tr. 2:3-10.
[28] Doc. 39 at 2.
[29] *See* Atty. Fee Hearing Def. Ex. F.

-4-

Case No. 1:15-CV-2416
Gwin, J.

Accordingly, the Court **AWARDS** Defendants $2,500 in attorney fees as compensation for their insurance deductible payment.

*2. Law Director Supervision*

Defendants are not entitled to attorney fees for the time Orange Law Director Stephen Byron spent supervising outside counsel McLandrich.

Attorney Stephen Byron of Walter Haverfield LLP is Orange Village's law director.[30] A contract between Orange and Walter Haverfield sets out Byron and his associates' responsibilities and compensation.[31] Byron currently receives a $2,500 monthly salary for his services.[32]

Defendants' attorney fee documentation indicates that Byron and his associates' work on the case was primarily supervisory. During the attorney fees hearing, Defendant Orange Village conceded that McLandrich completed all legal work related to the lawsuit, excluding the attorney fees motion.[33] Indeed, Byron's billing entries primarily describe reading emails about case developments, conferencing with McLandrich, and reviewing McLandrich's work product. For example, an October 2015 billing entry states that Byron "[c]onferenced with insurance defense counsel John McLandrich and apprise[d] the Mayor and Tom Shields regarding the status of the litigation."[34] Likewise, a November 2016 billing entry states that Byron "[r]eview[ed] and approve[d] brief in opposition to Mr. Ra's motion for leave to file."[35]

Awarding attorney fees for Law Director Byron's supervisory work would be redundant. Law Director Byron is essentially Orange Village's in-house counsel. Awarding fees to in-house

---

[30] Doc. 39 at 2.
[31] *See* Atty. Fee Hearing Def. Exs. A-E.
[32] Atty. Fee Hearing Def. Ex. E.
[33] Atty. Fee Hearing Tr. 38:1-3.
[34] Atty. Fee Hearing Def. Ex. G at 3.
[35] Atty. Fee Hearing Def. Ex. Q at 3.

Case No. 1:15-CV-2416
Gwin, J.

counsel is only appropriate where in-house counsel performs legal work that outside counsel otherwise would have performed.[36]

Here, Byron's work was duplicative of work performed by outside counsel McLandrich. Byron primarily "perform[ed] the role of a client, *i.e.* keeping abreast of what was happening in the litigation, providing counsel with information known to the client, and advising counsel of client's views as to litigation strategy."[37] Awarding attorney fees for Byron's in-house counsel work would be double billing.

The Court declines to award fees for Byron's duplicative, supervisory work.

*3. Attorney Fees Briefing*

Defendants are entitled to attorney fees for Byron and his associates' attorney fees briefing, however.

Courts have the discretion to compensate prevailing parties for preparing and litigating the attorney fees issue.[38] "Fees for fees" awards are subject to the same reasonableness standard as other attorney fee requests.[39]

According to Defendants' billing records, Law Director Byron and his associates spent 12.2 hours researching for, drafting, editing, and filing the motion for attorney fees.[40] The Court finds that 12.2 hours is a reasonable amount of time to draft a brief attorney fees motion.

Moreover, Byron and his associates' $210 hourly billing rate is reasonable. The Court finds a reasonable hourly rate by looking to "the rate that lawyers of comparable skill and

---

[36] *See Procter & Gamble Co. v. Weyerhaeuser Co.*, 711 F. Supp. 904, 906 (N.D. Ill. 1989); *see also Scott Paper Co. v. Moore Business Forms, Inc.*, 604 F. Supp. 835, 837 (D. Del. 1984) (awarding attorney fees where in-house counsel prepped witnesses, attended depositions, and assisted with brief writing because outside counsel otherwise would have performed this work).
[37] *Procter & Gamble Co.*, 711 F. Supp. at 907.
[38] *See N.E. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 725 (6th Cir. 2016) (discussing "fees for fees" compensation).
[39] *H.D.V. – Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 387 (6th Cir. 2016).
[40] Atty. Fee Hearing Def. Exs. M, N & O.

Case No. 1:15-CV-2416
Gwin, J.

experience can reasonably expect to command" in the area.[41] According to the Ohio State Bar Association, the median billing rate for civil rights litigation in 2013 was $350 per hour.[42] Furthermore, the Sixth Circuit recently found that Ohio's "partial" civil rights practitioners earn $300-$550 per hour.[43] Accordingly, the $210 per hour sought by Defendants is reasonable.

Therefore, the Court **AWARDS** Defendants $2,562 in attorney fees for 12.2 hours of work on the attorney fee briefing.

*4. Appeals Expenses*

Defendants also seek fees associated with Ra's appeal of this Court's judgment.[44]

Section 1988 permits the award of attorney's fees to the "prevailing party." Defendants are not the "prevailing parties" on appeal. Therefore, this Court cannot award Defendants any attorney fees for their appellate work.

**B. Plaintiff Ra's Motion to Stay Execution of Judgment and Waive Bond**

Plaintiff Ra also moves this Court to stay execution of the judgment in this matter pending appeal without requiring him to post a supersedeas bond.[45]

"[A] party taking appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed. R. Civ. P. 62(d) . . . ."[46] Federal Rule of Civil Procedure 62(d) states: "If an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . . The bond may be given upon or after filing the notice of appeal or after

---

[41] *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).
[42] The Ohio State Bar Ass'n, *The Economics of Law Practice in Ohio in 2013*, at 40 available at : https://www.ohiobar.org/NewsAndPublications/Documents/OSBA_EconOfLawPracticeOhio.pdf. The OSBA article used billing data from 2012.
[43] *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 719–20 (6th Cir. 2016).
[44] *See* Atty. Fee Hearing Def. Ex. R.
[45] Doc. 37.
[46] *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966).

obtaining the order allowing the appeal. The stay takes effect when the court approves the bond."[47]

Trial courts have discretion to determine whether to require the bond.[48] The Sixth Circuit has not specified which factors a district court should consider.[49] Nevertheless, district courts generally require a full supersedeas bond unless the appellant has demonstrated "the existence of extraordinary circumstances."[50]

The moving party must also demonstrate that, in the absence of standard security, the opposing party will be properly secured against the risk that the moving party will be less able to satisfy the judgment subsequent to disposition of the post-trial motions.[51] "If the Court finds that the [moving party's] ability to satisfy its obligations now or in the future is uncertain, then it should not grant an unsecured stay."[52]

In this case, Plaintiff Ra fails to present extraordinary circumstances justifying waiver of the bond requirement. Ra states that he "will suffer undue financial and personal hardship and irreparable injury" if he has to post a supersedeas bond to stay execution of judgment.[53] Ra alleges that the financial detriment "would essentially deprive him of his 'basic right to appeal.'"[54]

However, Plaintiff Ra fails to offer documents or other evidence that would give the Court a sufficiently full picture of his financial situation. The Court cannot depart from Rule

---

[47] Fed. R. Civ. P. 62(d).
[48] *See Arban v. West Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003).
[49] *Mengelkamp v. Lake Metro. Hous. Auth.*, 2012 WL 6085084, at *1 (N.D. Ohio Dec. 6, 2012).
[50] *See Verhoff v. Time Warner Cable, Inc.*, 2007 WL 4303743, at *4 (N.D. Ohio Dec. 10, 2007) (listing cases).
[51] *Lincoln Elec. Co. v. MPM Techs., Inc.*, 2009 WL 3246936, at *1 (N.D. Ohio Oct. 6, 2009) (citing *Slip 'N Slide Records, Inc. v. TVT Records, LLC*, 2007 WL 1098751, at *1 (S.D. Fla. Apr. 8, 2007)).
[52] *Id.*
[53] Doc. 37 at 4.
[54] *Id.* (quoting *Ctr. for Int'l Envtl. Law v. Office of the United States Tr. Rep.*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003)).

Case No. 1:15-CV-2416
Gwin, J.

62(d)'s bond requirement without evidence of Plaintiff Ra's actual financial hardship.[55] Unsubstantiated statements in his brief are not enough.

Moreover, Plaintiff Ra has failed to demonstrate that an unsecured stay would adequately protect Defendants' interest in the judgment. Plaintiff's suggestion that he will suffer financial hardship if he has to satisfy the judgment is evidence that he may be unable or less able to satisfy the judgment in the future. Granting Plaintiff's motion would fail to "preserve[ ] the status quo while also protecting the appellee's rights."[56]

The Court **DENIES** Plaintiff Ra's motion to stay the judgment without a supersedeas bond. A bond of $5,062 is required to stay the judgment pending appeal.

### IV. Conclusion

For the foregoing reasons, the Court **ORDERS** the Plaintiff to pay **$5,062** in attorney fees. The Court **DENIES** Plaintiff's motion to stay the judgment without a supersedeas bond. The Court requires bond in the amount of $5,062 to stay the judgment.

IT IS SO ORDERED.

Dated: May 4, 2017         *s/    James S. Gwin*
                           JAMES S. GWIN
                           UNITED STATES DISTRICT JUDGE

---

[55] *Vaughan v. Memphis Health Ctr.*, 2006 WL 2038577, at *1 (W.D. Tenn. Jul. 20, 2006).
[56] *Arban*, 345 F.3d at 409.